KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
ALEXANDRA ROBERT GORDON
State Bar No. 207650
KIM L. NGUYEN
State Bar No. 209524
JOSE A. ZELIDON-ZEPEDA
State Bar No. 227108
KEVIN CALIA
State Bar No. 227406
Deputy Attorneys General
  1300 I Street
  Sacramento, CA  95814
  Telephone:  (916) 322-6114
  Fax:  (916) 324-8835
  E-mail:  Kevin.Calia@doj.ca.gov
*Attorneys for Defendant Attorney General Kamala Harris*

**KAUFMAN DOLOWICH & VOLUCK LLP**
LOUIS H. CASTORIA (California Bar No. 95768)
MARION V. CRUZ (California Bar No. 244223)
IAN A. JOHNSTON (California Bar No. 287229)
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 926-7600
Attorneys for Plaintiff
THOMAS MORE LAW CENTER

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **THOMAS MORE LAW CENTER,**<br><br>Plaintiff,<br><br>v.<br><br>**KAMALA HARRIS, in her Official Capacity as Attorney General of the State of California,**<br><br>Defendant. | 2:15-cv-03048-R-FFM<br><br>**FINAL PRETRIAL CONFERENCE ORDER**<br><br>Date: August 29, 2016<br>Time: 10:00 a.m.<br>Courtroom: 8, 2nd Floor<br>Judge: The Honorable Manuel L. Real<br>Trial Date: September 13, 2016<br>Action Filed: April 23, 2015 |

FINAL PRETRIAL CONFERENCE ORDER

# INTRODUCTION

Following pretrial proceedings and pursuant to the Court's minutes of the Pre-Trial Conference held on August 1, 2016, and continued to August 29, 2016 (ECF No. 119), Federal Rule of Civil Procedure 16, and Civil Local Rule 16 of the Central District of California (and consistent with Appendix A of those rules), **IT IS ORDERED:**

## 1. THE PARTIES:

Plaintiff: Thomas More Law Center

Defendant: Kamala Harris, in her official capacity as the California Attorney General.

Each of these parties has been served and has appeared.

The Pleadings which raise the issues are:

First Amended Complaint ("FAC") for Preliminary and Permanent Injunctive Relief and for a Declaratory Judgment (filed June 11, 2015, ECF 25), Answer of Defendant Attorney General Kamala D. Harris (filed June 25, 2015, ECF 30).

## 2. JURISDICTION AND VENUE:

Plaintiff's FAC raises claims under the Constitution, and thus this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## 3. ESTIMATED TRIAL TIME:

Pursuant to the Court's August 29, 2016 order, the parties are limited to six court hours each at the time of trial.

FINAL PRETRIAL CONFERENCE ORDER

1

4. **NON-JURY TRIAL:**

The trial is to be a non-jury trial. The parties lodged and served proposed findings of fact and conclusions of law on July 12, 2016 (ECF Nos. 103 and 107).

5. **THE FOLLOWING FACTS ARE ADMITTED AND REQUIRE NO PROOF:**

a. The Law Center is a national nonprofit public interest law firm that provides legal services to clients without charge. It is recognized by the Internal Revenue Service as section 501(c)(3) organization.

b. IRS Form 990, 990-EZ, and 990-PF include multiple "schedules" that tax-exempt organizations may be required to complete, depending on their activities, receipts, expenditures, and affiliations with other organizations.

c. Under federal law, generally, a charity required to complete Schedule B must report all contributors who have donated $5,000 or more to the organization.

d. As required by federal law, the Law Center has annually filed with the IRS Form 990, Schedule B, listing its significant donors.

e. The Attorney General's office sent five letters to the Law Center between March 6, 2012, and October 31, 2014 indicating that its filing with the Registry of Charitable Trusts ("the Registry") was incomplete because the Law Center did not include a copy of its Schedule B.

f. Dr. James T. McClave identified approximately 8,000 deficiency letters related to Schedule B forms that were sent to a wide variety of organizations.

g. The Law Center's counsel sent a letter to Registry on April 7, 2015, requesting a stay of their enforcement action in light of two other pending lawsuits, *Center for Competitive Politics v. Kamala Harris*, and *Americans for Prosperity Foundation v. Kamala Harris*.

h. The Law Center's registration as filed with the State of California is shown as "current."

1    i. The Law Center has never filed with California or any other state its IRS Form
2        990 Schedule B containing the names and addresses of donors.
3    j. Under the Supervision of Trustees and Fundraisers for Charitable Purposes Act,
4        California Government Code sections 12580, et seq., the Attorney General is
5        required to maintain a register of charitable corporations and their trustees and
6        trusts (the "Registry"), and "to that end," obtain "whatever information, copies
7        of instruments, reports, and records are needed for the establishment and
8        maintenance of the register." Cal. Gov't Code § 12584.
9    k. The "Donate" page of the Law Center's website contains a "Privacy Notice,"
10       which states: "Your personal and financial information will remain private. The
11       Thomas More Law Center does not sell, trade, or share personal information."
12   l. Thomas Monaghan was a major, early funder of the Law Center.
13   m. It is widely known that Thomas Monaghan was a founder and a funder of the
14       Law Center.
15   n. Mr. Monaghan remains "perfectly willing" to be listed on the Law Center's
16       website as "one of the people who helped to establish the Thomas More Law
17       Center," and has never requested to be removed from the website.
18   o. The Law Center has filed Annual Reports with the Registry since 2001 and has
19       never filed a Schedule B form with those reports.
20   p. Francia Morello ("Mrs. Morello"), office manager and paralegal for the Law
21       Center, reviews communications addressed to the Law Center's general and
22       intake email addresses.
23   q. In 2006, the Law Center's Information Technology department set up a
24       Barracuda firewall and/or spam filter. The implementation of the firewall
25       reduced the number of negative emails that the Law Center has received.
26   r. Mr. Thompson, the Law Center's President, Chief Counsel, and 30(b)(6)
27       witness, does not recall a conversation with a potential donor in which the donor
28

FINAL PRETRIAL CONFERENCE ORDER   3

    expressed a desire to give to the Law Center but was unwilling to give because of the controversy surrounding the Law Center.

s. Pamela Geller ("Ms. Geller") co-founded the American Defense Initiative ("AFDI") with Robert Spencer. AFDI is a non-profit organization, which acts through its websites pamelageller.com and Jihad Watch.

t. AFDI purchases advertising space on transit authority property in major cities throughout the United States to express its message on current events and public issues.

u. The Law Center represented AFDI after the city of Detroit's transit authority refused to allow print advertisements on its buses that were critical of radical Islamic threats.

v. Robert Spencer ("Mr. Spencer") is the other co-founder of AFDI.

w. Sally Kern ("Representative Kern") is a member of the Oklahoma House of Representatives, an office she has held since 2005.

x. The Law Center represented Representative Kern when she received national attention in 2008 for her remarks opposing gay marriage, due to her religious beliefs.

### 6. THE FOLLOWING FACTS, THOUGH STIPULATED, SHALL BE WITHOUT PREJUDICE TO ANY EVIDENTIARY OBJECTION

a. On March 24, 2015, the Registry sent a letter to the Law Center, stating that it was not in receipt of the Law Center's Schedule B filings.

b. The Charitable Trusts Section is a unit within the Public Rights Division of the California Department of Justice. It is responsible for overseeing the more than 100,000 charities, charitable trustees, and fundraising professionals incorporated or operating in California.

c. Specifically, the section is responsible for: (1) identifying, registering, collecting and maintaining public records for California charities and their fundraisers; (2)

1  prosecuting charity fiscal abuse, including fraud, diversion and mismanagement
2  of funds; (3) reviewing transactions that have a significant impact on the charity
3  and its assets, including mergers, sale of assets, conversion to another corporate
4  status and disposition of assets when a charity is dissolved; (4) reviewing
5  transactions involving the sale of nonprofit health facilities or the transfer of
6  their assets, which requires the Attorney General's written consent; and (5)
7  representing the People of the State of California, as beneficiaries, in trust and
8  probate litigation involving charitable gifts to unnamed charities.
9  d. Legal and audit staff launch investigations based on complaints of unlawful
10 activity lodged by members of the public or individuals affiliated with the
11 charities, such as former employees or board members. Investigations are
12 sometimes initiated based on media reports.
13 e. Complaints generally are directed to the Registry, which receives anywhere
14 from 50-100 complaints per month and forwards them to the Charitable Trusts
15 Section. Each complaint is reviewed by an attorney in the Charitable Trusts
16 Section. If the attorney, in consultation with appropriate supervisors, determines
17 that a complaint has merit, an investigation is opened and assigned to an
18 attorney and an auditor.
19 f. If an investigation finds misconduct by a charitable organization, Charitable
20 Trusts Section attorneys may resolve the unlawful behavior with the
21 organization informally or may initiate formal court proceedings against the
22 organization or its representatives. Some criminal cases are also referred to
23 other government agencies.
24 g. The Registry is responsible for registering charitable organizations as well as
25 people or entities that hold assets for charitable purposes. The Registry
26 maintains records and files related to such organizations. It is the job of the
27 Registry to collect and maintain all required information from charitable
28 organizations. The Registry does not conduct reviews of complaints, audits, or

FINAL PRETRIAL CONFERENCE ORDER  5

1  investigations of charities; these functions are handled by the legal and audit
2  staff of the Charitable Trusts Section.
3  h. Charitable organizations that have more than $50,000 in gross receipts must also
4  submit to the Registry the informational return filed with the IRS, known as the
5  Form 990/990-EZ or 990-PF. Cal. Code Regs. tit. 11, § 301 (2014).
6  i. The Registry maintains a database of filings and information related to entities
7  that are registered or required to be registered.
8  j. The Registrar has primary responsibility for overseeing the database.
9  k. The Registry is divided into the following functions: Front Desk, Registration,
10  Renewals, Delinquency, Raffles, Enforcement, and Commercial
11  Fundraising/Fundraising Counsel.
12  l. Under federal law, a tax-exempt organization filing a Form 990, 990-EZ, or
13  990-PF must complete and submit Schedule B if the organization received
14  money, securities, or other property valued at $5,000 or more directly or
15  indirectly from any one person during the year for which it is reporting. The
16  term "person" includes individuals, fiduciaries, partnerships, corporations,
17  associations, trusts, and tax-exempt organizations.
18  m. Under federal law, the $5,000 reporting threshold for Schedule B may be
19  increased for an organization described in section 501(c)(3) of the Internal
20  Revenue Code that files a Form 990 or 990-EZ and meets the public-support test
21  under Internal Revenue Code section 509(a)(1) and 170(b)(1)(A)(vi). A
22  qualifying organization may instead report on its Schedule B contributions the
23  greater of (1) $5,000 or (2) two percent (2%) of the organization's total revenues
24  from contributions, grants, and gifts.
25  n. Dr. McClave did not examine the data he collected to determine whether there is
26  any pattern the organizations to which the Registry directed Schedule B
27  deficiency letters and offered no opinion that there was any such pattern.
28

FINAL PRETRIAL CONFERENCE ORDER                6

o. Mr. Thompson is not aware of a single instance in which "any donor faced any harassment or harm of any kind because of confidential disclosure of their identity to the IRS."

p. Mr. Monaghan is not aware of ever having received an email or letter that referenced his service on the Law Center's board in a negative light.

q. Mr. Monaghan's inclusion "at the top of" a list of "the most antigay persons in the country" did not change the causes to which he chose to give or the method he used to engage in philanthropy, and he did not take steps to keep his donations secret.

r. Mr. Monaghan has not changed his giving based on "critics."

s. A donor who expressed a desire to remain anonymous (out of fear that ISIS would break into the Law Center's offices and steal a donor list in order to target donors) was able to contribute anonymously to the Law Center by sending $25 in cash.

t. To the Law Center's knowledge, "nothing bad has ever happened to any of" the Law Center's donors because their identities were disclosed to the IRS.

u. For most of her time at the Law Center, Mrs. Morello has had "fewer than five communications per year with donors." Those limited communications occurred only when the Law Center was "short staffed, people are out of the office and there's no one to answer the phone," in which case Mrs. Morello "may pick up the phone and there may be a donor on the phone." Those conversations did not involve any discussion of what motivates donors, or what might dissuade them from donating to the Law Center.

v. Mr. Spencer does not know any person who has identified himself/herself as a donor to the Law Center.

w. Mr. Spencer has never had a conversation with anyone who said he or she wanted to donate to the Law Center but claimed to be "too afraid for any reason."

FINAL PRETRIAL CONFERENCE ORDER 7

x. Mr. Spencer does not "know anything about Thomas More Law Center's donors specifically."

y. Ms. Geller does not know any person who has identified himself/herself as a donor to the Law Center.

z. Ms. Geller has not discussed with any potential donors whether they have fears about giving to the Law Center.

aa. Ms. Geller is not aware of any harm that has come to anyone associated with the Law Center because of the Law Center's association with Ms. Geller.

bb. On May 3, 2015, an event partially sponsored by AFDI was held in Garland, Texas. The event invited attendees to draw pictures of the Prophet Mohammed. Ms. Geller's name was used in its promotional materials.

cc. On the day of the Garland event, two individuals infiltrated the site and opened fire. Ms. Geller was present but was not hit. The gunmen were killed by police officers on the scene. Shortly after the event, an American ISIS leader, Abu Ibrahim Al Ameriki, issued a Fatwah calling for Ms. Geller's assassination.

dd. The Fatwah states: "Our aim was the khanzeer [pig] Pamela Geller and to show her that that we don't care what land she hides in or what sky shields her; we will send our Lions to achieve her slaughter. … Everyone who houses her events, gives her a platform to spill her filth are legitimate targets." The Fatwah continues, "We have 71 trained soldiers in 15 different states ready at our word to attack any target we desire. Of the 25 states, 5 we will name: Virginia, Maryland, Illinois, California, and Michigan."

ee. Mr. Spencer was at the Garland attack, standing next to Ms. Geller, when the shooting started.

ff. Representative Kern has not knowingly met or spoken to any of the Law Center's donors.

gg. Dr. Paul G. Schervish did not speak with any of the Law Center's donors or potential donors.

FINAL PRETRIAL CONFERENCE ORDER  8

hh. Although the instructions for IRS Form 990 permit the Law Center to disclose only those donors who gave more than two percent of annual contributions, the Law Center listed all donors who gave more than $5,000 during each year between 2010 and 2014.

ii. For 2010, 23 donors are listed on the Law Center's Schedule B. If the Law Center had used the 2 percent threshold, as permitted by the instructions to the IRS Form 990, only those donors who gave more than $26,000 would have been required to be listed. Only 2 donors gave contributions that the Law Center would have been required to report if it had used the 2 percent threshold.

jj. For 2011, 26 donors are listed on the Law Center's Schedule B. If the Law Center had used the 2 percent threshold, as permitted by the instructions to the IRS Form 990, only those donors who gave more than $24,000 would have been required to be listed. Only 3 donors gave contributions that the Law Center would have been required to report if it had used the 2 percent threshold.

kk. For 2012, 42 donors are listed on the Law Center's Schedule B. If the Law Center had used the 2 percent threshold, as permitted by the instructions to the IRS Form 990, only those donors who gave more than $27,000 would have been required to be listed. Only 2 donors gave contributions that the Law Center would have been required to report if it had used the 2 percent threshold.

ll. For 2013, 55 donors are listed on the Law Center's Schedule B. If the Law Center had used the 2 percent threshold, as permitted by the instructions to the IRS Form 990, only those donors who gave more than $35,000 would have been required to be listed. Only 7 donors gave contributions that the Law Center would have been required to report if it had used the 2 percent threshold.

mm. For 2014, 60 donors are listed on the Law Center's Schedule B. If the Law Center had used the 2 percent threshold, as permitted by the instructions to the IRS Form 990, only those donors who gave more than $38,000 would have been

required to be listed. Only 5 donors gave contributions that the Law Center would have been required to report if it had used the 2 percent threshold.

nn. Between 2010 and 2013, the Law Center received contributions from donor-advised funds, including Donors Trust, Fidelity Investments Charitable Gift Fund, and the Schwab Charitable Fund. The Law Center also received contributions from community foundations that operate as donor-advised funds, including the Community Foundation of Central Illinois and the Community Foundation of Southeast Michigan.

oo. The Law Center's website included a section regarding "Other Ways to Give," which gave prospective donors information about making donations using donor-advised funds.

## 7. CLAIMS AND DEFENSES:

**Plaintiff:** Plaintiff incorporates by reference its Memorandum of Contentions of Fact and Law filed on June 27, 2016 (ECF Doc. No. 79) and Trial Brief filed on July 12, 2016. Plaintiff claims the Attorney General's demand for its Schedule B is also preempted by federal law. See ECF No. 26 at 12-13; ECF No. 79 at 10-11. Plaintiff respectfully contends that the Ninth Circuit wrongly decided the issue of federal preemption and reserves its right to submit proposed conclusions of law to this effect. Plaintiff has preserved its right to appeal its federal preemption claim.

Plaintiff is prepared to present testimony, either live or by designation, of several witnesses whose testimony in *AFPF* and in this case will establish that (1) the Attorney General's collection of Schedule B donor lists serves no important government interest in practice, and her collection of Schedule Bs from the Law Center is not narrowly tailored to support any such interest; (2) anonymous donors have strong and constitutionally protected interests in maintaining their anonymity as against all-too-real threats to their liberty and safety; and (3) the Attorney General cannot guarantee the confidentiality of Schedule Bs once collected. These

FINAL PRETRIAL CONFERENCE ORDER
10

include staff from Thomas More Law Center (the "Law Center") and the Charitable Trusts Section of the Attorney General's Office and the Registry of Charitable Organizations, such as, Steven Bauman, Tania Ibanez, and Jami Cantore, as well as Plaintiff's experts, Dr. James McClave and Dr. Paul Schervish.

These issues have largely been litigated and decided in *Americans for Prosperity Foundation v. Kamala Harris* ("*AFPF*") No. CV-14-9448-R, 2016 WL 1610591 (C.D. Cal. Apr. 21, 2016), as Plaintiff's motion *in limine* for issue preclusion (ECF 73) demonstrates. *Appling v. State Farm Mut. Aut. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-33 (1979). Even without such preclusion, the facts will support the same conclusions as in AFPF.

The Law Center's witnesses will testify regarding the First Amendment harm to Plaintiff's donors resulting from the disclosure of their identities to the Attorney General. Plaintiff will present the testimony of a donor and founder of the Law Center, Thomas Monaghan (by designation). Plaintiff will also present testimony from known associates of the Law Center, [Pamela Geller, Robert Spencer, and State Representative Sally Kern], whose testimony is directly material to establish potential chill to anonymous donors. (See *Brown v. Socialist Workers '74 Campaign Comm.* (Ohio), 459 U.S. 87, 100 (1982)(evidence of private and government hostility towards the Socialist Workers Party and its members establishes a reasonable probability that disclosing the names of contributors and recipients will subject them to threats, harassment, and reprisals).

Dr. Paul Schervish, the author of the only peer-reviewed study regarding anonymous donors' behavior, will also testify regarding the reasonable probability of harm to the Law Center's donors if their identities are disclosed to the Attorney General.

Any evidence regarding the effect, if any, of California Code of Regulations, Title 11, § 310 effective on July 8, 2016 ("AG Regulation") on the multiple threats

FINAL PRETRIAL CONFERENCE ORDER

11

to confidentiality of Schedule Bs demanded by the Attorney General should be barred. Plaintiff filed a motion *in limine* to exclude any evidence of the Attorney General's rulemaking relating to the then-proposed regulation. (ECF 74). Defendant has since filed a Request for Judicial Notice of the AG Regulation to which Plaintiff timely objected pursuant to Federal Rule of Evidence 201. (ECF 116). The fact of the new regulation is a given, but its legal effect on this case is for the Court to determine. Defendant's request that the Court take judicial notice of the <u>effect</u>, if any, the regulation would have on the confidentiality of Schedule Bs should be denied. Plaintiff is prepared to present evidence that the AG Regulation has no effect on the multiple and all-too-real threats to the confidentiality of Schedule Bs demanded by the Attorney General in this case.

**Defendant:** The Attorney General does not plan to pursue any affirmative defenses (*i.e.*, matters on which the Attorney General bears the burden of proof), but instead will contend that the Law Center has not met its burden of showing any constitutional violation and has not satisfied the applicable test for demonstrating that it is entitled to injunctive or declaratory relief.

Staff from the Charitable Trusts Section of the Attorney General's Office and the Registry of Charitable Organizations will testify about the state regulation of charities, the history behind it, the reasons for such oversight, and how the Attorney General's Office uses the information it obtains, including Schedule B, to investigate improper activities by charities. These improper activities range from self-dealing to misuse of charitable assets.

Staff from the Charitable Trusts Section will testify about its procedures to ensure that charities submit all required documentation (like IRS Form 990 and its attachments). Additionally, testimony and documentary evidence will demonstrate that it is the longstanding policy of the Registry to protect donor information from public disclosure, the efforts that the Registry makes to keep information

confidential; and the fact that if any organization complained of inadvertent disclosure, the Registry has or would take steps to remove any inadvertent disclosure. This testimony may include a discussion of regulations that became effective on July 8, 2016 regarding the confidentiality of these filings and other recent efforts to ensure that donor information is kept confidential.

The evidence will also demonstrate that plaintiff cannot establish "any actual burden on First Amendment rights flowing from the Attorney General's demand for and collection of it Schedule B forms for nonpublic use." *Americans for Prosperity Foundation v. Harris*, 809 F.3d 536, 539-541 (9th Cir. 2015). The testimony of the Law Center's witnesses will demonstrate that donors have not refused to donate because the Law Center is required to confidentially disclose their identities and donations to a government agency, donors have not suffered harm resulting from confidential disclosures to a government agency (including annual disclosures of its Schedule B to the Internal Revenue Service ), and numerous donors who have publicly disclosed their own contributions to the Law Center have not suffered harm because of those donations. These admissions will demonstrate that there is no substance to the Law Center's claim that donors are reasonably likely to suffer harm from nonpublic disclosure.

Without any evidence that its donors will suffer First Amendment harm were it to comply with the Schedule B requirement, the Law Center seeks to present evidence that a few of its clients have faced harassment after engaging in controversial public activities. Any such evidence of harassment "directed not against [plaintiff itself], but against prominent public figures" is inadequate to establish an actual burden on First Amendment rights arising from the Schedule B requirement. *Americans for Prosperity Foundation*, 809 F.3d at 541.

## 8. REMAINING ISSUES TO BE TRIED:

In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

**Plaintiff:**

a. Whether the Attorney General has violated 42 U.S.C. § 1983 because her demand for Schedule B, as applied to Thomas More Law Center, is unconstitutional under the First and Fourth Amendments;

b. Whether the Attorney General has a compelling state interest for her demand for unredacted, nationwide donor lists in Schedule Bs of public charitable trusts, as actually applied in practice;

c. Whether the Attorney General has a compelling state interest for Thomas More Law Center's unredacted, nationwide donor list in Schedule B, as actually applied in practice;

d. Whether there is a substantial relation between the Attorney General's demand for Thomas More Law Center's unredacted, nationwide donor list in Schedule B and any compelling state interest, as actually applied in practice;

e. Whether there is a substantial relation between the Attorney General's demand for Thomas More Law Center's unredacted, nationwide donor list in Schedule B and any compelling state interest, as actually applied in practice;

f. Whether there is a reasonable probability that the Thomas More Law Center and its donors will be subjected to threats, harassment, or reprisals as a result of the Attorney General's compulsion of the Law Center's Schedule B donor lists, as actually applied in practice;

g. Whether the Attorney General has alternative, less restrictive means to obtain donor information, as needed;

1    h. Whether this Court should permanently enjoin the Attorney General from obtaining Thomas More Law Center's unredacted Schedule Bs in violation of 42 U.S.C. § 1983 and its First Amendment rights;

i. Whether this Court should permanently enjoin the Attorney General from obtaining Thomas More Law Center's unredacted Schedule Bs in violation of 42 U.S.C. § 1983 and its Fourth Amendment rights; and

j. Whether Thomas More Law Center is entitled to its attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**Defendant:**

a. Whether Plaintiff has suffered any cognizable First Amendment harm arising from the Attorney General's nonpublic Schedule B disclosure requirement;

b. Whether Plaintiff has demonstrated a reasonable probability that the compelled disclosure of [its] contributors' names will subject them to threats, harassment, or reprisal from either Government officials or private parties;

c. Whether the Attorney General's nonpublic Schedule B disclosure requirement is substantially related to the Attorney General's interest in enforcing the law and protecting the public from fraud and illegality related to charitable organizations that solicit funds in California;

d. Whether Plaintiff has suffered any cognizable Fourth Amendment harm arising from the Attorney General's nonpublic Schedule B disclosure requirement;

e. Whether there is a likelihood of substantial and irreparable injury to Plaintiff absent an injunction;

f. Whether Plaintiff has an adequate remedies at law;

g. Whether the balance of equities favors Defendant; and

h. Whether the public interest would be disserved by an injunction.

**9. DISCOVERY STATUS:**

Discovery is closed.

FINAL PRETRIAL CONFERENCE ORDER     15

**10. DISCLOSURE STATUS:**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The parties filed respective Trial Exhibit Lists on July 8, 2016. The parties attach a joint exhibit lists as Attachment A. The parties have further agreed that the exhibits listed in Attachment B shall be admitted without objection at trial:

**11. WITNESS LISTS:**

The parties' respective Witness Lists have been filed with the Court (ECF Nos. 94 and 96).

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment, as well as any witness necessary to establish a foundation for the admission of records or other evidence).

Each party reserving the right to present certain evidence by way of deposition or trial testimony is in the process of marking such depositions in accordance with L.R. 16-2.7. The transcripts of such testimony shall be lodged with the Clerk as required by L.R. 32-1.

The parties currently expect the following witnesses to testify live at trial.[1]

To be called by the Law Center:
1. Richard Thompson
2. Catherine McMillan
3. Representative Sally Kern
4. Dr. Paul Schervish
5. Robert Spencer

To be called by the Attorney General:
6. Tania Ibanez

---

[1] The parties also reserve the right to submit designations from the depositions and/or prior trial testimony of these witnesses to expedite the presentation of evidence, to avoid the need to recall witnesses, or if a witness becomes unavailable.

FINAL PRETRIAL CONFERENCE ORDER          16

|    |     |                   |
|----|-----|-------------------|
| 7. | David Eller |           |
| 8. | Professor Ray Madoff |  |
| 9. | Joseph Zimring |       |

In addition, the parties currently expect to submit designations from the depositions and/or prior trial testimony of the following witnesses:

1. Francia Morello
2. Pamela Geller
3. Thomas Monaghan
4. Steve Bauman
5. Jami Cantore
6. Kevis Foley
7. Sonja Berndt
8. Belinda Johns
9. Chris Harryman
10. Robert Ralls

## 12. MOTIONS IN LIMINE:

The following law and motion matters and motions *in limine*, are pending or contemplated:

    a. Plaintiff's Motions *in Limine*, ECF Nos. 69, 70, 73, 74; and

    b. Defendant's Motions *in Limine*, ECF Nos. 71-72.

## 13. BIFURCATION:

Bifurcation of the following issues for trial is ordered: None.

FINAL PRETRIAL CONFERENCE ORDER     17

**14. ORDER:**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: August 29, 2016

_____
Hon. Manuel L. Real
United States District Judge

Approved as to form and content.

Dated: August 10, 2016

KAUFMAN DOLOWICH & VOLUCK, LLP

/s/ Louis H. Castoria
Louis H. Castoria
Marion V. Cruz
Attorneys for Plaintiff
THOMAS MORE LAW CENTER

Dated: August 10, 2016

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
ALEXANDRA ROBERT GORDON
KIM L. NGUYEN
JOSE A. ZELIDON-ZEPEDA
Deputy Attorneys General

/s/ Kevin A. Calia
KEVIN A. CALIA
Deputy Attorney General
*Attorneys for Attorney General Harris*

FINAL PRETRIAL CONFERENCE ORDER

18