**KAUFMAN DOLOWICH & VOLUCK, LLP**
LOUIS H. CASTORIA, ESQ.(SBN 95768)
lcastoria@kdvlaw.com
425 California Street, Suite 2100
San Francisco, CA 94104
Telephone: (415) 926-7600
Facsimile: (415) 926-7601

Attorneys for Plaintiff,
THOMAS MORE LAW CENTER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

THOMAS MORE LAW CENTER,

        Plaintiff,

    vs.

ROB BONTA, in his Official Capacity as Attorney General of California,

        Defendant.

Case No.  2:15-cv-03048-R-FFM

Action Filed:  April 23, 2015
Trial Date:     June 28, 2016

**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THOMAS MORE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS – 42 USC §1988; FRCP R. 54**

Date:      March 7, 2022
Time:      10:00 AM
Courtroom:  8D
Judge:    Hon. Christina A. Snyder

1

## **INTRODUCTION**

After nearly seven years of litigation, the Supreme Court of the United States issued a July 1, 2021 opinion finding facially unconstitutional the California Attorney General's demand that all 501(c)(3) charities active in the state surrender their list of major donors or risk the state's regulatory wrath. The decision in the present case was a modern rendition of the Court's seminal civil rights case on the right of associational advocacy, *NAACP v. Alabama*, 357 U.S. 449 (1958).

The Thomas More Law Center ("the Law Center") objected to the demand by the California Attorney General ("the Attorney General") for its annual Schedule B—an attachment to its confidential IRS tax return, IRS Form 990, that identifies large donors. A separate case filed earlier by Americans for Prosperity Foundation ("*AFPF*"), sought similar relief: a permanent injunction against enforcement of the donor disclosure demand, as-applied to each organization and facially, applicable to all charities active in the state. A facial challenge had been sought unsuccessfully in an earlier case, *Center for Competitive Politics v. Harris*, 784 F.3d 1307 (9th Cir. 2015). The Law Center preserved its facial challenge, and the case proceeded on an as-applied basis.

The Law Center obtained the exact declaratory and injunctive relief that it originally sought under 42 U.S.C §1983: a determination that California's donor disclose demands are facially unconstitutional. As the prevailing party in this action, the Law Center is entitled to an award of attorneys' fees and costs, in an amount to be determined by the Court in proportion to the value of the work performed, the momentous outcome, and the benefit to all registered charities active in California, and by extension, nationwide, pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54. The Law Center respectfully requests that this Court award a total of $5,145,434.07. This award includes $4,891,495 in

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

reasonable attorneys' fees as supported by the attached Exhibits and declarations of Douglas E. Mirell, Esq. of Greenburg Glusker, LLP, Thomas G. Hungar of Gibson, Dunn, and Crutcher LLP, and Sean Gates of Charis Lex P.C.— $4,276,330 in attorney fees attributable to work performed by the Law Center's lead counsel, Kaufman, Dolwich, & Voluck, LLP ("KDV"), and $615,165 in attorney fees attributable to the Law Center's lead Supreme Court counsel, Alliance Defending Freedom ("ADF"). The Law Center also requests $76,811.27 in reasonable fees— $51,693.05 in reasonable expenses incurred by KDV and $25,118.22 in reasonable expenses incurred by ADF, $168,094.04 in expert fees, and $9,033.76 in taxable costs.

## I.  **OVERVIEW OF THE LITIGATION**

### a.  **Background to Lawsuit**

The Thomas More Law Center is a national nonprofit law firm based in Ann Arbor, Michigan, founded on the principles of defending and restoring America's religious heritage and moral values. (First Amended Complaint "FAC" at 2, June 11, 2015, ECF 25.)  The Law Center aims to preserve the sanctity of human life, family values, and religious freedom. *Id.* The Law Center provides legal services at no cost, and relies on tax-deductible donations from its contributors. *Id.* at 2–3. It is recognized by the IRS as a §501(c)(3) charitable organization. *Id.* at 3. As an organization on the frontline of conservative and Christian issues, it often receives abusive treatment. *Id.* at 4; *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2381 (2021).

Title 11, section 301 of the California Code of Regulations requires charities registered in California to file with the Attorney General annual Registration Renewal Fee Reports and certain Internal Revenue Service (IRS) Forms, including

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

IRS Form 990 and the Schedule B attachment thereto. Cal. Code. Regs. tit. 11, § 301 (2021). The Schedule B forced charities to disclose the names and addresses of donors who either donated $5,000 or more or who contributed to at least 2% of the charity's annual receipts. *Ams. for Prosperity Found.*, 141 S. Ct. at 2380. The Schedule B is supposed to remain confidential, but in numerous cases, this information became public. *Id.* at 2381.

For years, the Attorney General did not force charities to disclose their donors. *Id.* at 2380. Accordingly, the Law Center did not submit its schedule B as part of its annual Registration. (FAC at 3–4, June 11, 2015, ECF 25.) On March 24, 2015, the Attorney General sent a letter to the Law Center threatening penalties, late fees, and suspension or revocation of the Law Center's registered status unless the Law Center complied within 30 days. *Id.* at 4. On April 7, 2017, the Law Center responded to the Attorney General's letter and requested a stay of any enforcement action so that they could have time to come to an agreement, especially in light of two pending cases (*Center for Comparative Politics* and *Americans for Prosperity Foundation*). *Id.* at 8–9. The Attorney General did not provide a substantive response. *Id.* at 9. The Law Center's counsel called Tania Ibanez of the Attorney General asking to postpone the enforcement action, but she said that the Attorney General would not do so. Decl. of Louis H. Castoria, ¶ 27.

### b. The Complaint/First Amended Complaint

On April 23, 2015, the Law Center filed its Complaint against the Attorney General seeking injunctive and declaratory relief to protect the identities of its donors. (Complaint, April 23, 2015, ECF 1.) Although there were different grounds, all causes of actions sought the same relief, a determination that the Attorney General may not force the Law Center to disclose its Schedule B and may not penalize the Law Center for refusing to do so. *Id.* at 10–13. That same day, the

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

Law Center also filed for a Temporary Restraining Order to stay any enforcement action by the Attorney General relating to the Law Center's Schedule B. (Application for TRO, April 23, 2015, ECF 10.) On April 29, 2015, the District Court granted the Temporary Restraining Order and issued an Order to Show Cause regarding the preliminary injunction. (Order Granting TRO, April 29, 2015, ECF 13.) This led to further litigation regarding the issuance of a preliminary injunction. (*See* the Attorney General's Response to Order to Show Cause re TRO, May 4, 2015, ECF 16; Reply ISO Mot. For TRO, May 6, 2015, ECF 19.) This Court granted the preliminary injunction. (Order Issuing Preliminary Injunction, May 19, 2015, ECF 23.)

On June 12, 2015, the Attorney General filed an appeal from the preliminary injunction. (Clerk Order re Appeal, June 12, 2015, 9th Cir. Inj. ECF 3.)[1] This heavily contested appeal included an opening brief of 399 pages with exhibits and record excerpts, and the Law Center's answering brief of half that size, 196 pages. (Opening Brief, July 9, 2015, 9th Cir. Inj. ECF 8; Answering Brief, August 6, 2015, 9th Cir. Inj. ECF 14.) After reviewing the Attorney General's opening brief, the Attorney General's 39-page reply brief, and relevant case law, the Law Center's lead counsel and one associate attended the Ninth Circuit hearing on the appeal. (Reply Brief, August 20, 2015, 9th Cir. Inj. ECF 19; Louis H. Castoria's Acknowledgment of Hearing, October 15, 2015, 9th Cir. Inj. ECF 29; Oral Argument, December 9, 2015, 9th Cir. Inj. ECF 30.)

### c.  Essential Research

---

[1] This case involves two appeals to the Ninth Circuit. The first appeal relating to the injunction is Docket # 15-55911 and will be cited as "9th Cir. Inj. ECF [#]" The second appeal relating to the judgment is Docket # 16-56855 and will be cited as "9th Cir. ECF [#]."

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

As part of the work on this case, the Law Center's counsel researched the following areas:

- Compelled Disclosure Case Law
- First Amendment Right to Association
- Fourth Amendment Right against Unreasonable Search and Seizure
- Federal Preemption
- Actions for Declaratory and Injunctive Relief Against Violations of Constitutional Rights
- Actions under 42 U.S.C. § 1983 for Compelled Disclosure
- Standards of Scrutiny for Compelled Disclosure (Decided by the Supreme Court)
- Standards of Review on Appeal
- Procedural Issues Related to the Above

Decl. of Louis H. Castoria, ¶ 42.

### d. Discovery

During this case, the Law Center's counsel conducted the following discovery:

- Serving Discovery Requests (Requests for Admissions, Interrogatories, Requests for Production of Documents)
- Responding to Discovery Requests (Interrogatories and Requests for Production of Documents)
- Taking Depositions (Tania Ibañez of the Attorney General's office and Expert Ray D. Madoff)
- Defending Depositions (Expert Paul Schervish, Expert James T. McClave, the Law Center's President and Chief Legal Counsel Richard Thompson, Law Center Witness Catherine McMillan, Law Center Witness Fran

6

Morello, Law Center Board Member Thomas Monaghan, Witness Robert Spencer, Witness Pamela Geller)

- Attending and Preparing Deposition of Sally Kern, Member of the Oklahoma House of Representatives

Decl. of Louis H. Castoria, ¶ 43.

### e. Cross-Motions for Summary Judgment

Both the Law Center and the Attorney General filed Motions for Summary Judgment. (Pl.'s Mot. Summ. J., May 9, 2016, ECF 52; Def.'s Mot. Partial Summ. J., June 20, 2016, ECF 75.) The Law Center's Motion included 5 declarations and 2 expert reports. (ECF 53–60.) The Attorney General's Motion included 1 declaration that had 18 attached exhibits. (Decl. of Kevin A. Calia, June 20, 2016, ECF 76.) The Attorney General's Opposition included 1 declaration that had 17 attached exhibits. (Opp. re Mot. Summ. J., June 27, 2016, ECF 86.) The Law Center also filed a reply after analyzing all declarations and supporting evidence. (Pl.'s Reply for Summ. J, July 5, 2016, ECF 92.) Both Motions were denied. (Order Denying Pl.'s Mot. Summ. J and Def.'s Mot. Partial Summ. J., July 18, 2016, ECF 115.)

### f. Bench Trial

The Law Center participated in the 4-day bench trial, including closing arguments. (Minutes of Court Trial, ECF 131–33, 138.) Preparation for this trial included:

- Speaking with Trial Witnesses
- Analysis of 13 Bankers Boxes' Worth of Material for Potential Use at Trial, Including Designations of Deposition Testimony and Exhibits
- Drafting and Opposing Motions in Limine
- Preparing Witness Lists

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

The District Court found in the Law Center's favor, issuing a permanent injunction against the Attorney General. (Order for J., November 16, 2016, ECF 139.)

### g.  Second Appeal to the Ninth Circuit

On December 15, 2016, The Attorney General filed an appeal to the Ninth Circuit. (Notice of Appeal, December 15, 2016, ECF 142.) The Attorney General filed its First Brief that totaled 96 pages and its accompanying Excerpts of Record that totaled 1336 pages. (Appellee's First Br., July 10, 2017, 9th Cir. ECF 16, Appellee's Excerpt of R., July 10, 2017, 9th Cir. ECF 17.) The Law Center filed an unopposed motion to extend time to file the Second Brief. (Unopposed Mot. To Extend Time, August 25, 2017, 9th Cir. ECF 24; Order Granting Unopposed Mot. To Extend Time, August 28, 2017, 9th Cir. ECF 25.) The Law Center then filed its Second Brief that totaled 168 pages and its accompanying Excerpts of Record that totaled 182 pages. (Appellant's Second Br., October 20, 2017, 9th Cir. ECF 28; Appellant's Supp. Excerpts of R., October 20, 2017, 9th Cir. ECF 29.) The Attorney General then filed its Third Brief that totaled 63 pages. (Appellee's Third Br., January 19, 2018, 9th Cir. ECF 39.) The Law Center also filed a Motion for Judicial Notice. (Mot. Judicial Notice, February 12, 2018, 9th Cir. ECF 45.) As a result of the Attorney General attempting to strike portions of the Law Center's reply brief, the Law Center also needed to expend hours opposing the Motion to Strike. (Mot. to Strike, February 13, 2018, 9th Cir. ECF 47; Opp. to Mot. to Strike, February 23, 2018, 9th Cir. ECF 50.) The Law Center also reviewed amicus briefs in preparation for oral argument. Decl. of Louis H. Castoria, ¶ 44. After the oral argument, the Ninth Circuit reversed which led to a petition for rehearing en banc and a Motion to Stay the mandate. (Oral Argument, June 25, 2018, 9th Cir. ECF 64; Opinion Reversing J., September 11, 218, 9th Cir. ECF 66; Pet. For Reh'g En

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

Banc, September 25, 2018, ECF 67; Mot. to Stay the Mandate, May 28, 2019, 9th Cir. ECF 70; Order Granting Mot. to Stay the Mandate, August 2, 2019, 9th Cir. ECF 72.)

### h. Petition to the Supreme Court

After the Petition for Rehearing En Banc was denied, work began on a Petition for Certiorari to the United States Supreme Court. At about this time, the Law Center retained co-counsel at Alliance Defending Freedom, led by John Bursch, Esq., an experienced Supreme Court advocate. Decl. of Louis H. Castoria, ¶ 46–47. The two firms considered the best timing and procedure to maximize the chances that the Supreme Court would hear this case. Decl. of Louis H. Castoria, ¶ 45; Ex. 1 ADF Time and Task Entries.

During this time frame, the New Jersey and New York Attorneys General also sought the Law Center's Schedule B. Decl. of Louis H. Castoria, ¶ 48. The Law Center needed to evaluate these demands and the effect that they would have on the Petition. *Id*.

The Law Center and the Attorney General prepared for and attended meetings with the Solicitor General after the Supreme Court invited him to file a brief expressing the views of the United States. Decl. of Louis H. Castoria, ¶ 45; Ex. 1 ADF Time and Task Entries. The Solicitor General later filed an Amicus Brief in support of the Law Center's petition. (Br. Amicus Curiae of United States, November 24, 2020, Supreme Court Docket 19–255.)

The Supreme Court ultimately granted the Law Center's Petition. (Petition Granted, January 28, 2021, Supreme Court Docket 19–255.)

At that point, the Law Center began an extensive compilation of trial records to be submitted as an appendix with the appeal. Decl. of Louis H. Castoria, ¶ 49; Ex. 1 ADF Time and Task Entries. The Law Center spoke with potential amici

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

authors in support of The Law Center's position. Decl. of Louis H. Castoria, ¶ 50; Ex. 1 ADF Time and Task Entries.

The Law Center began researching, outlining, and writing the merits briefs. Decl. of Louis H. Castoria, ¶ 51; Ex. 1 ADF Time and Task Entries. The Law Center also analyzed the 36 amicus briefs submitted. representing more than 200 individuals and organizations. Decl. of Louis H. Castoria, ¶ 50; Ex. 1 ADF Time and Task Entries. The Law Center analyzed the California Attorney General's merits brief and supporting amici briefs, and it researched, outlined, and wrote the merits reply brief. Ex. 1 ADF Time and Task Entries. Finally, the Law Center began preparing for Supreme Court oral argument until the Court denied the Law Center's and American for Prosperity Foundation's motion to divide argument, at which point the Law Center turned to assisting the Foundation's attorney in preparing for argument. Ex. 1 ADF Time and Task Entries.

### i. Supreme Court's Order and Remand

As noted above, on July 1, 2021, the Supreme Court issued its opinion agreeing with the Law Center, concluding "that California's blanket demand for Schedule Bs is facially unconstitutional," *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021), reversing the Ninth Circuit's judgment, and remanding "for further proceedings consistent with this opinion." *Id.* at 2389.

Following remand, the Law Center began work on this fee motion and the corresponding effort to modify the judgment to reflect the Supreme Court's opinion. Decl. of Louis H. Castoria, ¶ 52. The Law Center sought to avoid extra time on this litigation by stipulating to the deadlines with the Attorney General. The Law Center also sought to negotiate the amount of attorney's fees, but has been unable to come to an agreement with the Attorney General. *Id.*

## II.   <u>ARGUMENT</u>

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

The Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988 (2018)) includes a fee-shifting provision which provides that in any action to enforce a provision of 42 U.S.C. § 1983 (2018), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b),(c) (2018). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.  Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quotations and citations omitted).

A § 1988 fee award involves three levels of analysis. First, whether the movant is a prevailing party. *See Hensley*, 461 U.S. at 429. Second, the amount of the party's lodestar figure, a way to calculate fees by multiplying the reasonable hours expended by the reasonable rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Finally, whether there are any factors entitling the party to an enhancement or reduction of the lodestar figure. *Id.*

Here, the Law Center is clearly the prevailing party, not only for itself, but for all of the 135,000 charities registered with the Attorney General, as well as the untold millions of those charities' donors. Because identical issues of forced donor disclosure are present in states outside of California, thousands of other 501(c)(3) organizations and their donors benefit from the Law Center's victory as well.

As explained below and in expert declarations, KDV's lodestar figure is $2,138,165 and ADF's lodestar figure is $615,165. Due to special circumstances in this case—the scope of the Law Center's victory, its cost-effective litigation, and the broad public benefit of the Supreme Court's decision, the Law Centers respectfully request an enhancement of 2x to the lodestar amount of its lead counsel, KDV, resulting in a total fee award of $4,898,855. The Law Center

11

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

respectfully requests that the Court, in its analysis and decision, separately analyze
and award attorney fees and costs for the work performed by (1) KDV, and
(2) ADF, since the Law Center requests an enhancement of attorney fees for the
work performed by KDV but does not seek an enhancement of attorney fees for the
work performed by ADF, since ADF's attorney-fee calculations are done at market
rates.

### a. The Law Center is the Prevailing Party and is Entitled to Recovery of Attorneys' Fees, Expert Fees, and Costs

The Law Center is the prevailing party in this case if succeeded on any
significant issue in the litigation that achieves some of the benefit sought in
bringing suit.  *See Hensley*, 461 U.S. at 433. Even if certain causes of action fail,
the full award should be given. *Id.* at 435. "[T]he fee award should not be reduced
simply because the plaintiff failed to prevail on every contention raised in the
lawsuit. Litigants in good faith may raise alternative legal grounds for a desired
outcome, and the court's rejection of or failure to reach certain grounds is not a
sufficient reason for reducing a fee. The result is what matters." *Id.* (citations
omitted.) This rule allows plaintiffs to recover both on unsuccessful causes of
actions and unsuccessful stages of litigation. *Cabrales v. Cnty. of L.A.*, 935 F.2d
1050, 1052 (9th Cir. 1991).

Here, the Law Center is the undisputed prevailing party. It initially brought
this lawsuit to overturn the Attorney General's disclosure mandate and prevent the
Attorney General from forcing it to disclose its Schedule B. (FAC, June 11, 2015,
ECF 25.) The Law Center prevailed on its as-applied challenge when this Court
found that "TMLC's irreparable First Amendment injuries cannot adequately be
compensated by damages or any other remedy available at law." (Order for J. at
11, November 16, 2016, ECF 139.) Accordingly, this Court ordered that "the

Attorney General is permanently enjoined from requiring the Thomas More Law Center to file with the registry a periodic written report containing a copy of its Schedule B to IRS Form 990. TMLC shall no longer be considered deficient or delinquent in its reporting requirement because it does not file its confidential Schedule B with the Attorney General." (*Id.* at 12.)

As the Supreme Court ruled, "The District Court correctly entered judgment in favor of the petitioners and permanently enjoined the Attorney General from collecting their Schedule Bs." *Ams. for Prosperity Found.*, 141 S. Ct. at 2389. But the Supreme Court went further, declaring the Law Center was correct that "California's blanket demand for Schedule Bs is facially unconstitutional" and could not be enforced against any registrant. *Id.* at 2385.

### b. The Law Center's Lodestar Amount for KDV is Reasonable

#### i. Reasonable Rates

Under the Ninth Circuit's "forum rule,"[2] "[r]easonable fees under § 1988 are calculated according to the prevailing market rates in the relevant legal community, (*citations*), and the general rule is that the rates of attorneys practicing in the forum district … are used." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992); *Sierra Club v. U.S. Environmental Protection Agency*, 339 Fed.Appx. 678, 679 (9th Cir. 2009). "Within this geographic community, the district court should take into consideration the experience, skill, and reputation of the attorney." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013).

Here, the Law Center requests the following rates:

---

[2] In some circumstance, courts will award an attorney from outside of the relevant legal market to rates from the legal market he/she practices in.  *See*, *e.g.*, *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

| Timekeeper | Rate/Hour |
|---|---|
| Louis H. Castoria | $650 |
| Kevin Mattessich | $650 |
| Peter Strolli | $650 |
| Kevin Windels | $650 |
| Ian Anderson | $400 |
| Rina Bersohn | $600 |
| Marion Cruz | $350 |
| Shane Kolding | $400 |
| Ian Johnston | $400 |
| Sheila Pham | $400 |
| Stacey Chiu | $400 |
| Brandon Kahoush | $400 |
| Elina Protich | $400 |
| Rachel Raphael | $525 |
| Haley Devaney | $350 |
| James Jordan | $350 |
| Alexander Schwartz | $350 |
| Gwen Wagner | $350 |

As explained in the Declaration of Douglas Mirell, these rates were calculated on the timekeeper's location, practice area/complexity of case, years of experience, and size of firm. Decl. of Douglas E. Mirell, pp. 3–16, 26. These are the same four factors that matter most in determining reasonable rates as used by the National Association of Legal Fee Analysis ("NALFA"). Decl. of Douglas E. Mirell, Exhibit A.

These rates are reasonable based on Mr. Mirell's opinion and the NALFA data, and are also in line with rates awarded in similar § 1983 cases in the Central District of California. For example, a District Court held that $775 per hour is a reasonable rate for a Los Angeles attorney of roughly 40 years of experience who has litigated First Amendment issues, $675 per hour is a reasonable rate for a similar attorney with 35 years of experience and who was not lead counsel, and

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

$375 per hour is a reasonable rate for an attorney of 5-7 years of experience. *Dowd v. City of Los Angeles*, 28 F.Supp.3d 1019, 1052–57; *see also Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (affirming a reasonable rate of $400/hour); *see also McCown v. City of Fontana*, 711 F.Supp.2d 1067, 1073 (C.D. Cal. 2010) *aff'd* 464 Fed.Appx. 577 (9th Cir. 2011) (finding that rates of $450 per hour, $350 per hour, and $300 per hour were reasonable).

In addition, a reasonable hourly rate is not controlled by the actual rates billed. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). "Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount." *Id.* "Determination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "Furthermore, it is perfectly appropriate for a district court to award an hourly rate higher than is customarily charged by the plaintiff's attorney or than is set forth in the retainer fee agreement." *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (citations omitted).

Here, the actual rates billed to the client cannot be used to determine the reasonable hourly rate of the timekeepers. As a firm working on behalf of insurance companies, KDV timekeepers offer below market rates to comply with carrier fee schedules. Decl. of Louis Castoria, ¶ 10. Therefore, these insurance rates are not reflective of the actual market rates used in Douglas E. Mirell's Declaration and the above cases or generally in constitutional law cases that are not bound by insurers' rates.

ii.    <u>Reasonable Hours</u>

The second part of the lodestar calculation is the number of hours reasonably expended on a matter. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Counsel

for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* at 434. Time spent preparing fee applications under 42 U.S.C. § 1988 is compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013).

As of December 31, 2021, KDV attorneys reasonably billed a total of 4298.5 hours on this case, including time spent on this motion for fees. The Law Center has supported this figure with detailed, contemporaneously-recorded time records that describe with particularly the date, activity, and time spent on each litigation task over an approximately seven (7) year period. Decl. of Louis Castoria, ¶ 21, Exh. B. As such, these records reflect the work KDV attorneys charged after carefully reviewing initial billing records, and then exercising billing judgment to delete or reduce various entries. *Id.*

These hours were necessary for the ultimately successful litigation of this case. This is a complex case that has lasted for nearly seven years, involved two appeals before the Ninth Circuit, a successful Petition for Writ of Certiorari to the U.S. Supreme Court, and victory on the merits. As explained in Section II of this Memorandum, this lengthy and difficult case required substantial time and effort.

If anything, the Law Center's attorneys' efficiency reduced the total number of hours that would have otherwise been billed. The amount of work done in these hours, the thin staffing of the case, the use of evidence and arguments from the *AFPF* case, and a comparison to the hours worked by *AFPF*'s counsel all show the Law Center's attorneys achieved an outstanding result in a greatly reduced number of hours billed.

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

The Law Center's counsel tried to avoid having to file this case at all, asking the Attorney General's office to postpone its threatened draconian measures until after the *AFPF* case was decided. The Attorney General refused, necessitating this lawsuit. The Court and the parties' time and expense could have been avoided altogether. The Attorney General cannot in good conscience contest paying attorney fees in a case in which the fees could have totaled $0.00.

After the Law Center's case was filed, its counsel made good faith efforts to avoid unnecessary hours billed by thinly staffing the case. Though 18 timekeepers were involved over the seven-year span of the case, only six billed more than 100 hours: one partner, two experienced associates, one younger associate, and two paralegals. Further, the Law Center billed in tenth-of-an-hour increments. Decl. of Louis Castoria, ¶¶ 24–26.

During the 2016 trial in this case, KDV had only two attorneys and one paralegal in attendance. Decl. of Louis Castoria, ¶ 24. In contrast, the Attorney General routinely had five or more attorneys in the courtroom. *Id.*

The Law Center has consistently tried to cut down on the number of hours by attempting to postpone the Attorney General's enforcement, using trial preparation and testimony from AFPF, and regularly attempting to settle this motion. Decl. of Louis Castoria, ¶ 28–32.

Therefore, the Law Center must be allowed to recover fees for all hours spent on this matter as these hours were reasonable and necessary. The chart below shows the lodestar calculation of the reasonable rate multiplied by hours:

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

| Timekeeper | Hours | | Rate/Hour | | Total |
|---|---|---|---|---|---|
| Louis H. Castoria | 1828.2 | x | $650 | = | $1,188,330 |
| Kevin Mattessich | 31.5 | x | $650 | = | $20,475 |
| Peter Strolli | 16.4 | x | $650 | = | $10,660 |
| Kevin Windels | 4.8 | x | $650 | = | $3,120 |
| Ian Anderson | 24.7 | x | $400 | = | $9,880 |
| Rina Bersohn | 46.8 | x | $600 | = | $28,080 |
| Marion Cruz | 790.4 | x | $350 | = | $276,640 |
| Shane Kolding | 43.9 | x | $400 | = | $17,560 |
| Ian Johnston | 524.5 | x | $400 | = | $209,800 |
| Sheila Pham | 305.0 | x | $400 | = | $122,000 |
| Stacey Chiu | 48.5 | x | $400 | = | $19,400 |
| Brandon Kahoush | 27.0 | x | $400 | = | $10,800 |
| Elina Protich | 122.0 | x | $400 | = | $48,800 |
| Rachel Raphael | 16.8 | x | $525 | = | $8,820 |
| Haley Devaney | 6.5 | x | $350 | = | $2,275 |
| James Jordan | 395.2 | x | $350 | = | $138,320 |
| Alexander Schwartz | 64.9 | x | $350 | = | $22,715 |
| Gwen Wagner | 1.4 | x | $350 | = | $490 |
| **CUMULATIVE TOTAL** | | | | | **$2,138,165**[3] |

### c. The Law Center's Should Receive an Enhancement for KDV's Work Based on Special Circumstances

The lodestar calculation is just the "initial estimate of a reasonable attorney's fee," and depending on the case, adjustments may be made. *Blum*, 465 U.S. at 888. An enhanced award is justified in cases of exceptional success, protracted litigation, preclusion of other employment, and novelty/difficulty of the question. *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553–54; *Hensley*, 461 U.S. at 435; *Sourvayong v. Lackawanna County*, 872 F.3d 122, 128 (3d Cir. 2017). As

---

[3] This differs from the $2,124,755 that Douglas Mirell recommended because it includes an additional 30 hours worked after Mr. Mirell finished his declaration. The additional hours were included at the rate that he suggested.

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

explained in the Declaration of Douglas E. Mirell, these factors all support an enhancement in this case. ¶¶ 40–52.

Further, similar cases have resulted in an enhancement of the lodestar amount. In *Geier v. Sundquist*, 372 F.3d 784, 795 (6th Cir. 2004), the court held that it was an error to not issue an enhancement where the plaintiffs went through protracted litigation resulting in the Sixth Circuit holding for the first time that "there was an affirmative duty to remove all vestiges of state-imposed segregation in institutions of public higher education, just as there was such an obligation at lower educational levels."

*Geier* did not reach the Supreme Court. Its injunction applied only to Tennessee schools, and the precedent was limited to the Sixth Circuit. *See id.* The court reasoned that "[t]he legal principles advanced by the *Geier* plaintiffs were pathbreaking and of great social import" as demonstrated by the fact that the original lead plaintiff was asked to speak at the Department of Justice's Civil Rights Division's Fortieth Anniversary event. *Id.* at 795–96.

Here, the Law Center has achieved a result that was pathbreaking, of great social important, and has a precedential effect that will extend far beyond one state or one circuit. The Law Center's result applies to charities nationwide (including 60,000 in California alone). *See Ams. for Prosperity Found.*, 141 S. Ct. at 2380. The *amici* charities span "the ideological spectrum, and indeed the full range of human endeavors." *Id.* at 2388. The gravity of this case is demonstrated by the hundreds of *amici curiae* supporting the Law Center. *Id.* This decision protected not only charities, but "information about a charity's top donors—a small handful of individuals in some cases, but hundreds in others. … includ[ing] donors' names and the total contributions they have made to the charity, as well as their addresses." *Id.* at 2386.

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

Compare these results with those in *Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1051 (N.D. Cal. 2020) where the court held that the "the Settlement achieved by plaintiffs' counsel provides considerable and substantial relief to the class members, which therefore justifies a lodestar multiplier of at *least* 1.124." (Emphasis added.) There, the settlement lead Levi's Stadium to remediate 2,600 barriers in and around the stadium and provide a $24 million non-reversionary damages fund for football game attendees. *Id.* If a case that applies to only one football stadium, did not go to the Supreme Court or even the Ninth Circuit, and resulted in a settlement rather than an opinion with national precedential value results in a minimum multiplier of 1.124 and total attorney's fees of $12,258,003.53 (*Id.* at 1048), then the Law Center's precedential victory requires the Court here to award a greater multiplier.

Thanks to the Law Center's action, the right to association against compelled disclosure has been protected for hundreds of thousands of charities across the country and the millions of donors to those charities. This result, achieved through 6-plus years of complex litigation, forced the Law Center's lead counsel to restrict taking on other matters. For these reasons, the Court should award a 2x multiplier, resulting in total KDV attorney's fees of $4,276,330.

**d. The Law Center's Lodestar Amount for ADF is Reasonable**

    i. <u>Reasonable Rates</u>

For ADF's work, the Law Center requests the following rates:

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

| Timekeeper | Rate/Hour |
|---|---|
| John Bursch | $850 |
| David Cortman | $750 |
| Rory Gray | $650 |
| Chris Schandevel | $600 |
| Mathew Hoffman | $500 |
| Mark Lippelmann | $300 |
| Cindy Eville | $150 |

As explained in the Declarations of Thomas G. Hungar and Sean Gates, these rates were calculated on the timekeeper's location, practice area/complexity of case, years of experience, and size of firm, the same four factors that matter most in determining reasonable rates as used by NALFA and explained above. Although the rates for ADF's timekeepers are based on national Supreme Court practitioners, there are also in line with the rates awarded in similar § 1983 cases in the Central District of California, discussed above.

ii.   Reasonable Hours

ADF attorneys and a paralegal billed a total of 1,127.8 hours on this case, including time spent on this motion for fees. The Law Center has supported this figure with detailed, contemporaneously-recorded time records that describe with particularly the date, activity, and time spent on each litigation task over the course of the Law Center's Supreme Court proceedings. Ex. 1 ADF Time and Task Entries. The Law Center has reduced the hours for ADF timekeepers by 211.9 and requests an award only for 915.9 adjusted hours. Even the unadjusted number of hours is "entirely reasonable." Declaration of Thomas G. Hungar, ¶¶ 17-21.

The chart contained on Exhibit 2, Summary Table of Requested Attorneys Fees, shows the lodestar calculation of the reasonable rate multiplied by ADF's adjusted hours.

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

### j. The Law Center is Entitled to its Expert Fees as Part of Its Attorneys' Fees

The civil rights fee statute, 42 U.S.C. § 1988(c), states, "In awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

Here, the Law Center incurred $168,094.04 in expert fees. These included fees for the following experts, conducting the following work, at the following rates:

- Dr. Paul G. Schervish's rate was $500/hour. Decl. of Louis H. Castoria, ¶36. His work on this case consisted of reviewing case materials, drafting a report, and testifying on whether and to what extent the Law Center and its donors and potential donors may reasonably fear the loss of their anonymity and disclosure of their identities, including what chilling effect this may have on donations and their freedom to advocate for their religious beliefs. His total costs were $78,353.21.

- Dr. James T. McClave's rate was $750/hour. Decl. of Louis H. Castoria, ¶37. Dr. James T. McClave's company, Info Tech, was compensated at rates between $75 per hour and $500 per hour depending on the consultant or staff member working on the case. *Id*. His work on this case consisted of reviewing letters from the Attorney General sent to charitable organizations notifying them of filing deficiencies and identifying instances where confidential Schedule Bs were accessible from the Attorney General's public Registry website in order to determine when the Attorney General began requesting Schedule Bs and how many times the Attorney General breached

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

the Schedule B confidentiality policy. *Id*. Info Tech's total expert fees,
including Dr. McClave, were $33,600.56. *Id*.

- Douglas E. Mirell's rate was $950/hour. Decl. of Louis H. Castoria, ¶38. His
work on this case consisted of reviewing the invoices submitted by the Law
Center's counsel for hours billed, determining the reasonable rate of each
timekeeper based on location, experience, and other factors, determining the
number of reasonable hours based on a review of the substantive work done
by each timekeeper, and evaluate the Law Center's request for a fee
enhancement. *Id*. His total expert fees were $56,140.27. *Id.*

### k.  The Law Center is Entitled to Costs

#### a.  The Law Center is Entitled to Recover Its Taxable Costs

Unless a federal statute or rule, or a court order, provides otherwise, costs
"should be allowed to the prevailing party."[4]  Fed. R. Civ. P. 54 (d)(1). Pursuant to
28 U.S.C. § 1920, those taxable costs include:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily
obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials
where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

---

[4] The original judgment by Judge Manuel Real stated, "Each party shall bear its
own costs." (Order for J. at 12, November 16, 2016, ECF 139.) The modified
judgment that the parties have stipulated to does not include that language. (Order
Granting Stip. To Modify J. at 2, December 28, 2021, ECF 208.)

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

As stated in the Law Center's bill of costs, the Law Center's costs amounted to $9,033.76. Thus, the Court should award these costs to the Law Center.

### b.  The Law Center is Entitled to its Reasonable Expenses in Advancing this Litigation

"Out-of-pocket litigation expenses are reimbursable as part of the attorneys' fee, distinct from the costs already awarded to the plaintiffs under 28 U.S.C. § 1920." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The only restriction on this rule is that those expenses must be reasonable. *Id.* Out of pocket expenses are those that attorneys "normally charge to fee paying clients" rather than overhead expenses. *Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994); *Agster v. Maricopa Cty.*, 486 F. Supp. 2d 1005, 1017 (D. Ariz. 2007); *Doe ex rel. Doe v. Keala*, 361 F. Supp. 2d 1171, 1189 (D. Haw. 2005). These recoverable costs include amounts expended for "service of summons and complaint, service of trial subpoenas, fee for defense expert at deposition, postage, investigator, copying costs, hotel bills, meals, messenger service and employment record reproduction." *Harris*, 24 F.3d at 19.

Depending on the circumstances, courts have awarded prevailing plaintiffs' travel costs. *Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095, 1105 (N.D. Cal. 2008); *Anderson v. Wilson*, 357 F.Supp.2d 991, 1000 (E.D. Ky. 2005) (allowing travel costs to non-local counsel where their fees were based on local rates). Receipts are not necessary so long as the party provides sufficient detail of the costs. *Prison Legal News*, 561 F.Supp.2d at 1105.

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

Here, the Law Center's non-taxable costs are reasonable. Only the Law Center's lead counsel and occasionally one associate attended the pre-trial proceedings at the District Court and Ninth Circuit level. Decl. of Louis Castoria, ¶ 25. This reduced costs related to travel, lodging, and meals. Decl. of Louis Castoria, ¶ 35, Exhibit E. As seen by the invoices, each of these expenses were itemized and of the type that the Law Center's counsel normally charges to its clients. In addition, the invoices provide a sufficient level of detail as they itemize each separate expense and include the purpose, date, and amount of said expenses.

The same is true of the out-of-pocket expense incurred by ADF, as itemized on Exhibit 10, Itemized List of Non-Taxable Costs, and supported by the receipts appearing in Exhibit 11, Documents Supporting Non-Taxable Costs. In total, ADF's out-of-pocket expenses total $25,118.22.

Therefore, the Law Center's total of $76,811.27 for out-of-pocket expenses is reasonable and compensable.

## III.   <u>CONCLUSION</u>

The Law Center respectfully requests an award of $5,145,434.07. This award includes $4,276,330 for KDV attorney fees, $615,165 for ADF attorney fees, $168,094.04 in expert fees, $51,693.05 in KDV reasonable expenses, $25,118.22 in ADF reasonable expenses, and $9,033.76 in taxable costs.

DATED: January 18, 2022          **KAUFMAN DOLOWICH & VOLUCK, LLP**


                                 */s/ Louis H. Castoria*
                                 Louis H. Castoria
                                 Attorney for Plaintiff THOMAS MORE
                                 LAW CENTER

//
//

25

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS

**ALLIANCE DEFENDING FREEDOM**

*/s/John J. Bursch*
John J. Bursch
Attorney for Plaintiff THOMAS MORE
LAW CENTER

//

4894-5179-2646, v. 4

SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LAW CENTER'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS